IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01952-PAB-CBS

SONEE ADDY,

Plaintiff,

v.

PEORIA/TIMBERS JOINT VENTURE and
SHERRON ASSOCIATES, INC.,

Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 53] filed on January 13, 2012. In the Recommendation, the magistrate judge recommends that the Court grant defendants' motion for summary judgment [Docket No. 31]. Plaintiff filed objections to the Recommendation on January 27, 2012 [Docket No. 54], and the Court will therefore "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Jurisdiction over this matter is based on 28 U.S.C. § 1331.

## I. BACKGROUND

The Recommendation contains a thorough discussion of the factual background. The Court, therefore, provides only a brief summary for purposes of introducing the discussion of the pending motion.

Plaintiff began working at the Timbers Hotel as the Director of Human Resources

in August 2007.[1] In March 2008, she became the general manager of the hotel. Sherron Associates Loan Fund 22, LLC (the "Loan Fund") held a second mortgage on the hotel resulting from a loan it had provided to the owner of the hotel, Charlie Walsh. Mr. Walsh defaulted on the loan, and the Loan Fund initiated foreclosure proceedings. Sometime in August or September 2008, during the pendency of the foreclosure proceedings, Rob Neirynack of Cordess & Associates began serving as the receiver of the hotel. Mr. Neirynack oversaw the hotel's operations during the receivership and became plaintiff's supervisor. In late 2008, however, Mr. Neirynack entered into an consulting agreement with Landa Hotel Management, which was owned by Jack Skinner, in an effort to improve the hotel's revenue. Mr. Skinner had extensive experience in hotel management.

The Loan Fund thereafter created Timbers Group, LLC, and the Loan Fund and Timbers Group, LLC formed defendant Peoria/Timbers Joint Venture (the "Joint Venture").[2] The Joint Venture took over ownership of the hotel on January 2, 2009.[3] The Joint Venture retained Mr. Skinner, entering into a management agreement with a new entity formed by Mr. Skinner called Timbers Group 1, LLC. In his position overseeing the day-to-day operations of the hotel, Mr. Skinner supervised plaintiff in her role as general manager. On January 27, 2009, Mr. Skinner met with plaintiff to discuss

---

[1]The record does not indicate where the hotel is located.

[2]Defendant Sherron Associates, Inc. ("Sherron") was a managing member of the Joint Venture. Sherron's role in the Joint Venture was to provide financial information to other Joint Venture members and investors.

[3]Upon taking over ownership of the hotel, the first mortgage remained on the property. *See* Docket No. 31-2 at 5, Armstrong Depo. at 14, ll. 11-19.

certain tasks plaintiff had yet to complete. The "conversation became heated," and plaintiff requested that Mr. Thomas Armstrong, the Vice President of Sherron, be part of the meeting. *See* Docket No. 31 at 5, ¶ 18; Docket No. 49 at 3, ¶ 1. Plaintiff informed Mr. Armstrong that she believed Mr. Skinner was too critical of her and her staff and that she did not think she could work with his management style.[4] "Plaintiff did not complain to Defendants about any harassment or discrimination during the meeting on January 27, 2009 or otherwise." Docket No. 31 at 5, ¶ 20.[5] On January 28, 2009, Mr. Skinner terminated plaintiff. Plaintiff believes she was discharged "for speaking up and embarrassing him in front of his manager." Docket No. 49-2 at 45, ll. 9-10.

---

[4]Plaintiff asserts that this fact is disputed "because [she] recalled speaking about Mr. Skinner's illegal behavior in the meeting" in addition to these topics. *See* Docket No. 49 at 4, ¶ 7. Plaintiff, however, provides no record citation in support of that denial. The failure to provide "a specific reference to material in the record supporting the denial" is required by this Court's Practice Standards, Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv (emphasis omitted), as well as by the Federal Rules of Civil Procedure. The Court struck plaintiff's originally filed response for failure to comply with the same Practice Standard and granted plaintiff leave to re-file her response. *See* Docket No. 39. Consequently, there is no question that plaintiff was on notice of the requirement and has been afforded every opportunity to comply. Therefore, where plaintiff fails to cite any evidence in support of her denials, the Court will deem the asserted facts admitted. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring party asserting that a fact is in dispute "cit[e] to particular parts of materials in the record"); *see also* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.ix ("Repeated failure to follow [these procedures] may result in an order granting other proper relief."). Furthermore, the record citations elsewhere in plaintiff's response do not provide any clear evidence that plaintiff raised the issue of Mr. Skinner's "illegal behavior." *See, e.g.*, Docket No. 49-2 at 29-30 (testifying that, during the meeting with Mr. Armstrong and Mr. Skinner, she complained about Mr. Skinner "screaming at [her] in front of the staff" and communicated to Mr. Armstrong that she had discussed with Mr. Skinner "on numerous times . . . behavior that [she] want[ed] to outline," including her belief that she was treated differently because she doesn't "stay around at night and drink" with Mr. Skinner).

[5]Plaintiff asserts, without citation, that this is disputed because she "made previous complaints." Docket No. 49 at 4, ¶ 8; *see supra* n.3.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

Plaintiff claims that defendants terminated her employment due to gender discrimination and in retaliation for protected activity in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*[6] Plaintiff also asserts that defendants

---

[6]In her objections to the Recommendation, plaintiff references age discrimination. Neither plaintiff's complaint, *see* Docket No. 1, nor the final pretrial order, *see* Docket No. 47, however, contain a claim for age discrimination.

subjected her to a hostile work environment in violation of Title VII. The Recommendation concluded, and the Court agrees, that plaintiff failed to present evidence creating a genuine dispute of material fact on her Title VII claims.

**A. <u>Gender Discrimination</u>**

Because plaintiff presents no direct evidence of discrimination on account of sex, the Court must apply the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The first step of that analysis requires plaintiff to identify evidence supporting a prima facie case of gender discrimination.[7] In this case, the Court need not determine whether plaintiff has met this burden because, upon turning to the remaining elements of the burden-shifting framework, plaintiff's claim clearly fails.

After a plaintiff presents a prima facie case, the burden shifts to defendants to

---

[7]Plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). A prima facie case can also "consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)); *see id.* at 800, n. 5 ("There exists some tension in our case law regarding what a plaintiff must establish as part of his or her prima facie case of discrimination. Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext. *Sorbo*, 432 F.3d at 1173 & n. 5 (listing cases). Regardless of whether we analyze the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.' *Id.* at 1173.").

identify "a legitimate, nondiscriminatory reason for its employment decision." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). Defendants presented evidence that Mr. Skinner had concerns about plaintiff's failure to prepare a budget or a business plan, to hire a director of sales, to ensure that the sales department participated in a nearby exposition, and to complete an assignment regarding certain invoices. Defendants also put forward evidence that Mr. Skinner was unhappy with plaintiff's lack of urgency and professionalism, as well as the low performance of her staff. These constitute legitimate, nondiscriminatory reasons for plaintiff's termination.

"If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Id.* (citation and quotation marks omitted). The Court agrees with the Recommendation that plaintiff has not presented evidence showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). In her objections, the plaintiff points out that she had the necessary experience for the job and had increased occupancy rates and revenues. *See* Docket No. 54 at 5. These facts, however, do not refute most of the stated reasons for her termination, nor do they address whether defendants believed their proffered reasons. Furthermore, in her objections, plaintiff no

longer appears to assert that the "real reason" for her termination was gender. Instead, she asserts, without record citation, that she "has provided evidence that the real reason she was terminated was due to the Defendants' retaliation after [she] rais[ed] her concerns about Mr. Skinners' [sic] actions toward herself and other employees." Docket No. 54 at 6 ("The raising of the issues by [plaintiff] is a protected action and [plaintiff] has established that there is significant [sic] dispute in [sic] fact to allow a jury to determine whether or not the actions of the Defendants were wrongful."). Consequently, the Court will accept the Recommendation's conclusion that defendants are entitled to summary judgment on plaintiff's gender discrimination claim.

**B. Retaliation**

The Court now turns to plaintiff's retaliation claim. For plaintiff to survive summary judgment, she must present evidence in support of a prima facie case of retaliation. To do so, she must "demonstrate (1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted). The Court finds that plaintiff has failed to present sufficient evidence to permit a factfinder to conclude that she engaged in protected activity. "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203

(10th Cir. 2008).

Plaintiff contends that, during the January 27, 2009 meeting that precipitated her termination, she raised "concerns" about Mr. Skinner's behavior. *See* Docket No. 54 at 7. The evidence plaintiff cites in support of those vague assertions do not reveal that she complained of conduct prohibited by Title VII. *See* Docket No. 49-2 at 49-50 (testifying that, during the January 27, 2009 meeting, Mr. Skinner expressed his disappointment "about Sysco and the sales manager" after which plaintiff expressed her desire to "discuss some of the things that have happened here" such as Mr. Skinner "screaming" at her and calling her a liar in front of her staff); *see* Docket No. 49-2 at 53 ("I believe I was retaliated against for being a spokesperson for the hotel as a general manager.").[8] Evidence regarding plaintiff expressing "concerns" about Mr. Skinner's behavior without any specific description of the substance of the complaints she raised in the January 27, 2009 meeting falls well short of supporting the conclusion that she engaged in protected activity. *See, e.g.*, Docket No. 31-1 at 5 (testifying that she brought "this" to Mr. Armstrong's attention and stating that "this" could not keep going on because it was angering the staff but failing to identify anything about "this" that constituted violations of Title VII); Docket No. 49-2 at 29-30 (testifying that, during the meeting with Mr. Armstrong and Mr. Skinner, she complained about Mr. Skinner "screaming at [her] in front of the staff" and communicated to Mr. Armstrong that she had discussed with Mr. Skinner "on numerous times . . . behavior that [she] want[ed] to

---

[8]Plaintiff also references "Answers to Interrogatories No. 11" but fails to provide any citation to an exhibit in the record. The Court cannot locate an interrogatory response number eleven that corresponds with this factual issue.

outline," including her belief that she was treated differently because she doesn't "stay around at night and drink" with Mr. Skinner). Therefore, the Court finds that defendants are entitled to summary judgment on plaintiff's retaliation claim.

### C. Hostile Work Environment

Although plaintiff failed to present evidence of retaliation prohibited by Title VII during the January 27, 2009 meeting, she has identified inappropriate racial, gender, and sexual comments by Mr. Skinner that she contends created a hostile work environment. *See* Docket No. 49 at 10; Docket No. 54 at 6.

In order to prove a claim of sex discrimination based on a hostile work environment, "a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009). Even assuming plaintiff could establish that Mr. Skinner's conduct toward her was "because of her sex,"[9] she has fallen short of presenting evidence that would permit a reasonable factfinder to conclude that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to

---

[9] "[T]he critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other sex is not." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). As the Recommendation points out, most of the comments plaintiff describes had no "gender implications." Docket No. 53 at 19. With that said, the Recommendation concluded that Mr. Skinner's comment to plaintiff that, "if you act like a man around here, you wouldn't let everyone henpeck you" does not "establish a bias against women." Docket No. 53 at 14. Although it might not clearly establish such a bias, the statement does have gender implications that, if part of a larger body of evidence, could support a finding of gender discrimination.

alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (internal citations and quotations omitted). Although plaintiff identifies instances of opprobrious comments by Mr. Skinner, she has not shown that such comments were sufficiently severe or pervasive in relation to her personal work environment. *See Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1161-62 (10th Cir. 2008) (stating that a hostile work environment claim may be based on either severity or pervasiveness and that those two grounds "'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . ., while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute'") (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)); *see Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) ("A plaintiff does not make a showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.'") (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quotations, citation omitted)); *cf Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code.") (quotation omitted). Consequently, the Court will accept the Recommendation's conclusion that defendants are entitled to summary judgment on plaintiff's hostile work environment claim.[10]

---

[10]Because the Court concludes that plaintiff has failed to present sufficient evidence in support of her claims, there is no need to address Sherron's argument that it was not plaintiff's employer for purposes of Title VII liability.

**D. Wrongful Discharge**

The Recommendation, interpreting plaintiff's third and fourth claims to be duplicative, addressed them both pursuant to Title VII. Plaintiff did not object to this interpretation. Nevertheless, the Court notes that plaintiff's third claim for relief is entitled "wrongful discharge," whereas the fourth claim for relief specifically invokes Title VII. Therefore, the Court concludes that the third claim for relief arises under state law. Because the Court will grant summary judgment to defendants on all plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's wrongful discharge claim. *See* 28 U.S.C. § 1367(c)(3); *see also Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *cf. Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) ("'Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'") (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). The Court will therefore dismiss plaintiff's third claim for relief without prejudice.

**IV. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate [Docket No. 53] is ACCEPTED in part. It is further

**ORDERED** that defendants' motion for summary judgment [Docket Nos. 31, 57]

is GRANTED in part and DENIED in part. Summary judgment shall enter in favor of defendants and against plaintiff on plaintiff's first, second, and fourth claims for relief. It is further

**ORDERED** that plaintiff's third claim for relief, construed as a state law claim for wrongful discharge, is DISMISSED without prejudice. It is further

**ORDERED** that the trial preparation conference scheduled for May 18, 2012 and the jury trial scheduled for June 4, 2012 are VACATED.

DATED February 27, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge